IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHERYL K. MONTEZ, | ) | CV. NO. 10-00217 SOM-BMK |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION THAT |
| vs. | ) | PLAINTIFF CHERYL K. |
| | ) | MONTEZ'S MOTION FOR |
| OPERATING ENGINEERS LOCAL | ) | REMAND BE DENIED |
| UNION NUMBER 3, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION THAT PLAINTIFF CHERYL K.
MONTEZ'S MOTION FOR REMAND BE DENIED

Before the Court is Plaintiff Cheryl K. Montez's ("Plaintiff") Motion
for Remand.  (Doc. # 5.)  The Court heard the motion on June 15, 2010.  After
careful consideration of the motion, the supporting and opposing memoranda, and
the arguments of counsel, the Court RECOMMENDS that Plaintiff's Motion for
Remand be DENIED.

BACKGROUND

On December 24, 2009, Plaintiff filed a complaint in the Circuit Court
of the First Circuit, State of Hawaii ("circuit court") against Defendant Operating
Engineers Local Union Number 3 ("Union").  (Mot. Ex. 2.)  In her complaint,
Plaintiff alleged that she was employed by Parsons Constructors, Inc. ("PCI")

and/or Parsons Construction Services, Inc. ("PCSI") from about November 2005 to May 10, 2007.  (Compl. ¶ 6.)  She alleged that during the course of her employment, PCI and/or PCSI and/or their agents (collectively "Parsons") "engaged in unlawful conduct that unreasonably interfered with [her] work performance and/or created a hostile or offensive work environment for [her]." (Id. ¶ 14.)  Specifically, Plaintiff claimed that Parsons released her from employment and replaced her with a male worker on three separate occasions. (Id. ¶ 8.)  She also claimed that Parsons denied her the opportunity to train with and operate the same equipment as her male coworkers, as well as engage in the same job duties as her male coworkers.  (Id. ¶¶ 9, 10.)  She alleged that such denials were based on her sex.  (Id. ¶ 11.)

Plaintiff alleged that due to Parsons' unlawful conduct, she met with a Union representative on or about May 10, 2007 to report such conduct so as to initiate a grievance against Parsons.  (Id. ¶ 15.)  Plaintiff claimed that the Union represents the interests of heavy equipment operators and construction workers in Hawaii.  (Id. ¶ 3.)  She claimed that at all times pertinent, she was an active member of the Union.  (Id. ¶ 2.)  She alleged that to her knowledge, the Union never initiated a grievance on her behalf against Parsons.  (Id. ¶ 16.)  She claimed that in October 2008, she filed a Charge of Discrimination against Parsons with the

Hawaii Civil Rights Commission ("HCRC").  (Id. ¶ 17.)  She alleged that since

filing the Charge of Discrimination, the Union never dispatched her to any other

employer or job site.  (Id. ¶ 18.)  She asserted that as an active member of the

Union who is qualified to operate heavy machinery, the Union should have

dispatched her to apply for work with other employers in Hawaii that rely on the

Union as a source of referrals.  (Id. ¶ 19.)  Based on the foregoing, Plaintiff

asserted the following claims against the Union:  negligence, unlawful

discriminatory practices, harassment, and retaliation (Count 1); sex discrimination

and/or harassment (Count 3); intentional and/or negligent infliction of emotional

distress (Count 2); and additional conduct and punitive damages (Count 4).

On April 15, 2010, the Union removed the instant action to federal

court pursuant to 28 U.S.C. §§ 1441 and 1331.  (Doc. # 1.)  Plaintiff filed her

motion for remand on April 28, 2010.  (Doc. # 5.)  The Union filed an opposition

to Plaintiff's motion on May 19, 2010, and on May 28, 2010, Plaintiff filed a reply.

(Docs. ## 7, 8.)

## RELEVANT LAW

An action filed in state court may be removed to federal district court

only if the action could have brought in the federal district court originally.

28 U.S.C. § 1441(a) and (b); Matheson v. Progressive Speciality Ins. Co.,

319 F.3d 1089, 1090 (9th Cir. 2003).  "In the absence of diversity jurisdiction, this issue turns on the presence or absence of a federal question."  Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 747 (9th Cir. 1993).  While the presence or absence of a federal question is normally determined by examining the face of the plaintiff's well-pleaded complaint, "[i]n areas where federal law completely preempts state law, . . . a claim purportedly based on state law is considered to be a federal claim from its inception . . . ."  Id. (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)).  Thus, "such claims are considered to have arisen under federal law."  Id. (citing Caterpillar, Inc., 482 U.S. at 393).

The Union removed the instant action to federal court on the ground that some or all of Plaintiff's claims are completely preempted by federal law. (Notice of Removal ¶ 4.)  However, it is unclear as to which federal law the Union argues applies.  In its Notice of Removal, the Union states that Plaintiff's claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA § 301") and § 9 of the National Labor Relations Act ("NLRA § 9").  (Id.) However, the Union's Notice of Removal then states, "As such, Plaintiff's claims are completely preempted by § 301."  (Id.)

Courts have recognized that LMRA § 301 and NLRA § 9 implicate separate preemption principles.  Adkins v. Mireles, 526 F.3d 531, 539

(9th Cir. 2008).  LMRA § 301 provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185(a).  Thus, LMRA § 301 has been held to completely preempt any state causes of action for alleged violations of contracts between employers and labor organizations.  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983).  NLRA § 9 imposes upon unions the duty of fair representation.  29 U.S.C. § 159(a).  This federal statutory duty has been held to "displace[ ] state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."  Adkins, 526 F.3d at 539.

Ultimately, the Court need not reach the question of whether Plaintiff's claims are preempted by NLRA § 9.  This is because the Court concludes that Plaintiff's claims are completely preempted by LMRA § 301.

<u>DISCUSSION</u>

As stated above, LMRA § 301 completely preempts any state causes of action for alleged violations of contracts between employers and labor organizations.  29 U.S.C. § 185(a); Franchise Tax Bd., 463 U.S. at 23.  While the language of LMRA § 301 is limited to "[s]uits for violation of contracts," 29 U.S.C. § 185(a), courts have concluded that "[LMRA] § 301 'complete

5

preemption' must be construed to cover 'most state-law actions that require *interpretation* of labor agreements.'" Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000) (quoting Associated Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers, 109 F.3d 1353, 1356 (9th Cir. 1997)) (emphasis added).  Thus, "even suits based on torts, rather than on breach of collective bargaining agreements, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" Miller v. AT&T Network Sys., 850 F.2d 543, 545 (9th Cir. 1988) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)) (alteration in original).  Such construction of LMRA § 301 is intended to promote the uniform interpretation of collective bargaining agreements and the arbitration of labor disputes.  Balcorta, 208 F.3d at 1108; Eldridge v. Felec Servs., Inc., 920 F.2d 1434, 1436 (9th Cir. 1990) (citations omitted).

        LMRA § 301 does not, however, displace all state-law causes of action governing labor-management relationships.  Foster v. Richardson, 843 F. Supp. 625, 628 (D. Haw. 1994).  The Supreme Court has distinguished between claims that require interpretation of a collective bargaining agreement and those that require a court simply to refer to the agreement.  Balcorta, 208 F.3d at 1108.  The Supreme Court noted, "[W]hen the meaning of contract terms is not the

subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require [a] claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Thus, "[c]auses of action that only 'tangentially involv[e]' a provision of a collective-bargaining agreement are not preempted by [LMRA § 301]." Ramirez, 998 F.2d at 748 (quoting Hayden v. Reickerd, 957 F.2d 1506, 1509 (9th Cir. 1992)). Nor are causes of action that assert "nonnegotiable state-law rights . . . independent of any right established by contract." Id. (quoting Miller, 850 F.2d at 546) (quotations omitted).

Plaintiff moves for remand on the ground that all of her claims against the Union involve nonnegotiable state-law rights independent of any right established by the Collective Bargaining Agreement ("CBA"). (Mem. in Supp. of Mot. at 6, 9-10.) Specifically, Plaintiff argues that her claims allege violations of, among other things, Hawaii Revised Statutes ("HRS") §§ 378-2 and 378-62 and Hawaii Administrative Rule ("HAR") § 12-46-109. (Id. at 5-6, 9-10.) Plaintiff argues that as such, her claims are not subject to complete preemption under LMRA § 301 and thus, removal was improper. (Id. at 10.)

The Union argues that Plaintiff's claims are subject to complete preemption under LMRA § 301 because their resolution requires an interpretation

of the CBA.  (See Opp'n at 3-7.)  The Union notes that Plaintiff's claims allege

violations of its duties to initiate a grievance on her behalf, dispatch her, protect her

from being subjected to a discriminatory and/or hostile work environment, and

conduct an investigation into her complaints.  (Id. at 3-4.)  The Union argues that

such duties arise solely from, and are therefore governed by, the CBA.  (Id. at 3-7.)

The Union requests that the Court exercise supplemental jurisdiction over any

claims found not to be preempted.  (Id. at 9-10.)

         With the above-mentioned principles in mind, the Court addresses

Plaintiff's claims against the Union in turn.

I.      Negligence, Unlawful Discriminatory Practices, Harassment, and Retaliation
        (Count 1)

         In Count 1 of her complaint, Plaintiff alleged that she met with a

Union representative on or about May 10, 2007 to report Parsons' unlawful

conduct so as to initiate a grievance against it.  (Compl. ¶ 15.)  Plaintiff alleged that

to her knowledge, the Union never initiated said grievance.  (Id. ¶ 16.)  Plaintiff

alleged that in October 2008, she filed a Charge of Discrimination against Parsons

with the HCRC.  (Id. ¶ 17.)  Plaintiff alleged that since filing the Charge of

Discrimination, the Union never dispatched her to any other employer or job site.

(Id. ¶ 18.)  Plaintiff asserted that as an active member of the Union who is qualified

to operate heavy machinery, the Union should have dispatched her to apply for

8

work with other employers in Hawaii that rely on the Union as a source of referrals.  (Id. ¶ 19.)

Plaintiff asserted that the Union's failure to initiate a grievance on her behalf constitutes a continuous course and/or pattern of unlawful discriminatory practices, harassment, retaliation, and/or ratification of Parsons' unlawful conduct. (Id. ¶ 20.)  Plaintiff asserted that the Union's failure to dispatch her after she reported Parsons' unlawful conduct and filed a Charge of Discrimination against Parsons constitutes the same.  (Id. ¶¶ 21, 22.)  Plaintiff alleged that the Union's conduct constitutes "unlawful sexual discrimination and/or other unlawful discriminatory practices" in violation of, among other things, HRS §§ 378-2 and 378-62 and HAR § 12-46-109.  (Id. ¶ 24.)  Finally, Plaintiff asserted that the Union had a duty to protect her from being subjected to a discriminatory and/or hostile work environment, including, but not limited to, sexual discrimination by other employees.  (Id. ¶ 25.)

HRS § 378-2 provides in pertinent part:

It shall be an unlawful discriminatory practice:

(1)     Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record:

. . .

(D)    For any labor organization to exclude or expel from its membership any individual or to discriminate in any way against any of its members, employer, or employees; . . .

. . .

(2)    For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part . . . .

HRS § 378-62 provides in pertinent part:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1)    The employee or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A)    A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States . . . .

HAR § 12-46-109 provides that harassment on the basis of sex is a form of sex discrimination prohibited by HRS § 378-2.  Nelson v. Univ. of Haw., 97 Haw. 376, 387, 38 P.3d 95, 106 (2001).  HAR § 12-46-109(a) provides:

Unwelcome sexual advances, requests for sexual favors, and

10

other verbal or physical conduct or visual forms of harassment of a sexual nature constitute sexual harassment when:

(1)   Submission to that conduct is made either explicitly or implicitly a term or condition of an individual's employment; or

(2)   Submission to or rejection of that conduct by an individual is used as the basis for employment decisions affecting that individual; or

(3)   That conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

The Court does not dispute Plaintiff's contention that, if applicable, HRS §§ 378-2 and 378-62 and HAR § 12-46-109 provide non-negotiable state rights independent of any right established by contract.  The Court, however, concludes that in this case, the adjudication of such rights appears to require an interpretation of the CBA.  As noted above, Count 1 of Plaintiff's complaint is replete with allegations against the Union for failure to initiate a grievance and failure to dispatch her.  (Compl. ¶¶ 16, 18, 19-22.)  It is the Union's failure to initiate a grievance and failure to dispatch her that Plaintiff claims constitute "unlawful sexual discrimination and/or other unlawful discriminatory practices" in violation of HRS §§ 378-2 and 378-62 and HAR § 12-46-109.  (Id. ¶¶ 20-22, 24.) Because any duty relating to the filing of grievances and dispatching of members

arises solely from the CBA, the evaluation of Plaintiff's claims is "inextricably intertwined with consideration of the terms of [the CBA]." Miller, 850 F.2d at 545 (quoting Lueck, 471 U.S. at 213) (quotations omitted).  As such, Plaintiff's claims in Count 1 of her complaint are preempted by LMRA § 301.

II.     Sex Discrimination and/or Harassment (Count 3)

        In Count 3 of her complaint, Plaintiff alleged that the Union discriminated against and/or harassed her on the basis of her sex in violation of, among other things, HRS §§ 378-2 and 378-62 and HAR § 12-46-109.  (Compl. ¶¶ 38, 39.)  Plaintiff alleged that the Union's unlawful conduct "unreasonably interfered with [her] rights as a union member to pursue gainful employment through and/or by/with the assistance of [the Union]."  (Id. ¶ 37.)

        Again, the Court does not dispute Plaintiff's contention that, if applicable, HRS §§ 378-2 and 378-62 and HAR § 12-46-109 provide nonnegotiable state-law rights independent of any right established by contract. However, here, Plaintiff claims that the Union's unlawful conduct "unreasonably interfered with [her] *rights as a union member* to pursue gainful employment through and/or by/with the assistance of [the Union]."  (Id. (emphasis added).) Resolution of such a claim will require the Court to interpret the terms of the CBA. Accordingly, Plaintiff's claim of sex discrimination and/or harassment is

preempted by LMRA § 301.

III.    Intentional and/or Negligent Infliction of Emotional Distress (Count 2)

In Count 2 of her complaint, Plaintiff alleged that the Union

intentionally and/or negligently caused her to suffer severe emotional distress.  (Id.

¶ 33.)  Under Hawaii law, a claim for intentional infliction of emotional distress

("IIED") requires satisfaction of the following elements: (1) the act allegedly

causing the harm was intentional or reckless, (2) the act was outrageous, and

(3) the act caused extreme emotional distress to another.  Enoka v. AIG Haw. Ins.

Co., Inc., 109 Haw. 537, 559, 128 P.3d 850, 872 (2006) (citation omitted).

Because Hawaii law requires Plaintiff to establish that the Union acted

outrageously, it appears that an interpretation of the terms of the CBA is necessary.

See Price v. Molokai Gen. Hosp., Civ. No. 09-00548 DAE-KSC, 2010 WL

715413, at *6 (D. Haw. Mar. 1, 2010).  "The term 'outrageous' has been construed

to mean 'without just cause or excuse and beyond all bounds of decency.'"  Enoka,

109 Haw. at 559, 128 P.3d at 872 (citation omitted).  The CBA sets forth the

conduct by which the Union must abide.  Thus, whether the Union acted

outrageously could turn on to what extent, if any, the Union's actions violated the

CBA.  As such, Plaintiff's IIED claim is preempted by LMRA § 301.

Unlike Plaintiff's IIED claim, a determination of Plaintiff's claim for

negligent infliction of emotional distress ("NIED") does not require the Court to consider whether the Union acted outrageously.  Rather, the plaintiff "must establish, incident to his or her burden of proving actual injury . . . that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else."  <u>Doe Parents No. 1 v. State, Dep't of Educ.</u>, 100 Haw. 34, 69-70, 58 P.3d 545, 580-81 (2002) (emphasis omitted).  However, inasmuch as Plaintiff's NIED claim is cognizable only if there is some underlying negligent action undertaken by the Union, <u>Calleon v. Miyagi</u>, 76 Haw. 310, 320, 876 P.2d 1278, 1288 (1994), Plaintiff's NIED claim is preempted to the extent that Plaintiff's underlying claims are preempted, <u>see</u> <u>Price</u>, 2010 WL 715413, at *6.

IV.    <u>Additional Conduct and Punitive Damages (Count 4)</u>

Lastly, in Count 4 of her complaint, Plaintiff alleged that the Union had a duty to conduct a "fair, proper, and reasonable investigation," and to initiate a grievance regarding any complaints of unlawful conduct by its members' employers, including Parsons.  (Compl. ¶ 43.)  Plaintiff alleged that the Union's failure to investigate and failure to initiate a grievance constitute "unlawful retaliation and/or ratification" of Parsons' unlawful conduct.  (<u>Id.</u> ¶ 45.)  Plaintiff alleged that the Union's failure to dispatch her constitutes the same.  (<u>Id.</u> ¶ 46.)  Additionally, Plaintiff claimed that such conduct by the Union was wanton or

14

oppressive, and as such, warrants the imposition of an award of punitive damages. (Id. ¶ 48.)

The Court concludes that Plaintiff's foregoing claims are preempted by LMRA § 301.  Such claims are premised upon the Union's alleged failure to investigate Plaintiff's complaints, file a grievance on her behalf, and dispatch her. Because any duty relating to the investigation of complaints, filing of grievances, and dispatching of members arises solely from the CBA, Plaintiff's claims are "inextricably intertwined with consideration of the terms of [the CBA]." Miller, 850 F.2d at 545 (quoting Lueck, 471 U.S. at 213) (quotations omitted).

Furthermore, Plaintiff's request for punitive damages also appears to require an interpretation of the terms of the CBA.  "[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action." Television Events & Mktg., Inc. v. Amcon Distrib. Co., 488 F. Supp. 2d 1071, 1082 (D. Haw. 2006) (citation and quotations omitted).  Punitive damages are typically appropriate in cases where the defendant "has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations . . . ." Masaki v. Gen. Motors Corp., 71 Haw. 1, 11, 780 P.2d 566, 572 (1989) (citation and quotations omitted).  As noted above, the CBA sets forth the conduct by which the Union must abide.  Thus, whether the

Union acted wantonly or oppressively could turn on to what extent, if any, the Union's actions violated the terms of the CBA.

Based on the foregoing, the claims asserted in Count 4 of Plaintiff's complaint require the Court to interpret the terms of the CBA.  Accordingly, such claims are preempted under LMRA § 301.

CONCLUSION

For the above-mentioned reasons, the Court RECOMMENDS that Plaintiff's Motion for Remand be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, June 30, 2010.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Montez v. Operating Engineers Local Union No. 3, CV. NO. 10-00217 SOM-BMK; FINDINGS AND RECOMMENDATION THAT PLAINTIFF CHERYL K. MONTEZ'S MOTION FOR REMAND BE DENIED.